IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MACKAY and CELEBRITY FOODS, INC., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 10-218 |
| | : | |
| WILLIAM F. DONOVAN and SPINE PAIN MANAGEMENT, INC. | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                 October 14, 2010

Plaintiffs James Mackay and Celebrity Foods, Inc. Bring the instant action against Defendant Spine Pain Management, Inc. ("Versa Card") and its president and CEO William Donovan, alleging fraud and breach of contract related to a 2008 Mutual Release and Settlement Agreement ("Settlement Agreement") entered into by the parties. Now before the Court are Defendants' Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), asserting lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted.[1] For the reasons that follow, Defendants' Motions will be granted in part and denied in part.

**I.**     **Factual and Procedural Background**

Versa Card was a Delaware corporation with its principle place of business in

---

[1] Doc. No. 6 and 8.

1

Philadelphia, Pennsylvania through the end of December 2008.[2] As of January 5, 2009, the corporation notified the SEC that its principal place of business was now in Houston, Texas.[3] Defendant William Donovan signed an SEC filing dated March 2, 2009, listing himself as CEO of Versa Card.[4] On November 11, 2009, Versa Card changed its name to Spine Plain Management, Inc. ("SPM") and changed its primary business from debit cards to medical pain management.[5] Defendant William Donovan was listed as the President, CEO, and Prinicipal Financial Officer of SPM on SEC filings dated November 12, 2009.[6]

Plaintiffs were shareholders in Versa Card. On December 30, 2008, they entered into a Settlement Agreement with Versa Card, under which Plaintiffs tendered most of their shares of Common Stock, but Mackay retained 408,000 shares and Celebrity Foods retained 100,000 shares.[7] Plaintiffs therefore remained shareholders in the successor company, SPM, holding retained shares originally issued on September 8, 2008.[8] Plaintiffs' shares were subject to a six-month SEC-mandated restricted trading period, which expired on March 9, 2009.[9]

On March 27, 2009, Versa Card officer Richard Specht sent a Stop Transfer Resolution to the agent for Versa Card, demanding that the restrictions be continued until Versa Card issued

---

[2] Compl. ¶ 13.

[3] Compl. ¶ 14.

[4] Compl. ¶ 12.

[5] Compl. ¶ 7.

[6] Compl. ¶¶ 6, 9, 10.

[7] Compl. ¶¶ 15, 16, 19.

[8] Compl. ¶ 22.

[9] Compl. ¶ 21, 45.

written authorization to lift them.[10] On March 31, 2009, Plaintiff Celebrity Foods Network, Inc. ("Celebrity Foods") asked Defendant William Donovan, by e-mail letter, to remove the restrictions on the stock certificates.[11] This request was repeated on April 2, 2009, this time by both MacKay and Celebrity Foods.[12] On April 3, 2009, Defendant Donovan sent an e-mail to Mackay explaining that Versa Card would re-evaluate any stops in place after an audit and further investigations.[13] To date, Versa Card has not removed the restrictive legends,[14] despite an additional request from Plaintiffs on November 13, 2009.[15]

On January 19, 2010, Plaintiffs filed the instant complaint, alleging that issuance of the Stop Transfer Resolution violated the Settlement Agreement and constituted fraud and breach of contract, because the Settlement Agreement obligated Versa Card to "fully cooperate [with the] holders of the Retained Shares in causing the restrictive legends to be removed from the certificates evidencing the Retained Shares."

## II.     **Personal Jurisdiction**

Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction requires Plaintiffs to provide facts demonstrating that jurisdiction is proper.[16] Courts reviewing a motion to dismiss for lack of personal jurisdiction must accept all of the plaintiff's allegations as true and

---

[10] Compl. ¶ 49.

[11] Compl. ¶ 52.

[12] Compl. ¶ 53.

[13] Compl. ¶ 55.

[14] Compl. ¶ 56.

[15] Compl. ¶ 58.

[16] Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

construe disputed facts in favor of the plaintiff.[17] Federal courts sitting in diversity may exercise personal jurisdiction over non-resident defendants to the extent provided by the law of the state in which the federal court sits.[18] Pennsylvania's Long-Arm Statute allows personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment.[19] This standard requires that Defendants have minimum contacts with Pennsylvania such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.[20]

Minimum contacts ensure a fair warning to a defendant that he or she may be subject to suit in that state.[21] Jurisdiction may arise from general or specific contacts. General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state, while specific jurisdiction exists when the claim arises from or relates to conduct purposefully directed at the forum state.[22] In this case, Plaintiffs concede that the continuous and systematic contacts needed for general jurisdiction are missing.

Specific jurisdiction exists where plaintiff can show that:(1) the defendant purposely directed activities at the forum; (2) the litigation arose out of or relating to one or more of these

---

[17] Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

[18] Fed. R. Civ. P. 4(e). The Court, sitting in diversity, will apply federal procedural rules, although the parties have contracted that Delaware law governs the substance of the dispute between the parties. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

[19] Mellon Bank, 960 F.2d at 1221; 42 Pa. Cons. Stat. Ann. § 5322(b).

[20] Marten v. Godwin, 499 F. 3d 290, 296 (3d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

[21] Marten, 499 F.3d 296

[22] Marten, 499 F.3d 295-96.

4

activities; and (3) jurisdiction of the court comports with fair play and substantial justice.[23] Plaintiffs contend that the requirements of specific jurisdiction are satisfied in this case, because this claim arises from a contract entered into and executed between Plaintiffs and Versa Card. Although a contract with a resident plaintiff is not, by itself, sufficient to establish personal jurisdiction over nonresident defendants, minimum contacts may be supplied by the "terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties."[24] When the parties entered into the Settlement Agreement, both Celebrity Foods and Versa Card operated their businesses from Philadelphia, Pennsylvania. Defendant Donovan, though living in Texas, was an officer of Versa Card while it was still a Philadelphia-based corporation. Although Defendant Donovan denies ever traveling to Pennsylvania on Versa Card business, this Court must resolve factual inconsistencies in Plaintiffs' favor, and Plaintiffs maintain that Donovan came to Philadelphia on at least two occasions for that purpose. Additionally, Defendants knew that Plaintiff Celebrity Foods had its principal place of business in Pennsylvania and knew that a breach of the Settlement Agreement could cause Plaintiffs injury in Pennsylvania. Accordingly, the Court finds that the contracting party, Versa Card, and its officer, Defendant Donovan, had sufficient contacts with the forum to confer specific jurisdiction on this Court.

### III. **Improper Venue/ Forum *Non Conveniens***

In a diversity case, an action may be brought against an individual in a venue in which 1) any defendant resides if all defendants reside in the same state; 2) a substantial part of the events

---

[23] D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102-3 (3d Cir. 2009).

[24] Mellon, 960 F. 2d at 1123.

5

or omissions giving rise to the claim occurred; or 3) any defendant is subject to personal jurisdiction at the time an action is commenced, if there is no district in which the action may otherwise be brought.[25] "A defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."[26] When deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must accept as true the allegations in the complaint, although both parties may submit affidavits in support of their positions.[27] The defendant bears the burden of showing that venue is improper.[28]

Venue does not have to be the "best forum" for the action, as multiple districts could be proper.[29] The defendant bears the burden of showing that venue is improper, and a plaintiff's choice of venue is accorded deference, especially when that choice is plaintiff's home forum.[30] Where venue is improper, a court may dismiss a case in its entirety or transfer the case to a more suitable district.

In reviewing a Rule 12(b)(3) motion to dismiss for forum *non conveniens*, the Court must determine whether (1) an adequate alternative forum exists in which the case may be brought against all defendants and (2) that private and public interest factors weigh heavily in

---

[25] 28 U.S.C. § 1391(a).

[26] 28 U.S.C. §1391(c).

[27] Leone v. Cataldo, 574 F.Supp.2d 471, 483 (E.D. Pa. 2008).

[28] Leone, 574 F.Supp.2d at 483.

[29] Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC., 2009 WL 129740, at *2 (E.D. Pa. 2009).

[30] Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d. Cir. 1970).

favor of dismissal.[31]  Private interest factors include:

> [R]elative ease of access to sources of proof; availability of
> compulsory process for attendance of unwilling, and the cost of
> obtaining willing, witnesses; . . . and all other practical problems that
> make trial of a case easy, expeditious and inexpensive.[32]

The public interest factors include:

> [T]he administrative difficulties flowing from court congestion; the
> "local interest in having localized controversies decided at home"; the
> interest in having the trial of a diversity case in a forum that is at
> home with the law that must govern the action; the avoidance of
> unnecessary problems in conflict of laws, or in the application of
> foreign laws; and the unfairness of burdening citizens in an unrelated
> forum with jury duty.[33]

Defendants contend that Texas is the preferable forum for this case because the Stop Transfer Resolution was issued by Defendants in Texas, and Plaintiffs may seek redress in a federal court in Texas.  However, Plaintiff Celebrity Foods, Inc. has its principal place of business within this District and the Settlement Agreement between the parties was entered into in this District at a time when Versa Card also had its principal place of business here.

Defendants also suggest that it will be more burdensome to compel witnesses to testify in Pennsylvania than in Texas.  However, as two key witnesses for this case reside in Canada, and Plaintiff MacKay resides in Hong Kong, neither state is a more convenient forum for these witnesses.

Certain public interest factors also weigh in favor of this District.  As the Settlement Agreement elects Delaware law to govern disputes, the Court must apply Delaware law to the

---

[31] Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43-44 (3d. Cir. 1998).

[32] Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

[33] Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d. Cir. 1991).

7

substantive legal issues in this case. A Texas court is no better able to do so than this Court, and in fact may be less familiar with the many rulings of the Third Circuit regarding the application of Delaware law.

Although both Texas and the Eastern District of Pennsylvania might be appropriate venues in this case, a plaintiff's choice to sue in its home forum is afforded great deference. As Defendants did not present any factors weighing heavily in favor of dismissal or transfer to Texas, the Court will leave Plaintiffs' choice of venue here undisturbed.

## IV. Failure to State a Claim

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept a plaintiff's factual allegations as true and draw all logical inferences in favor of the non-moving party.[34] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[35] The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[36] That said, something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."[37] The Court has no duty to "conjure up unpleaded facts that might turn a frivolous action. . . into a substantial one."[38]

---

[34] ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. January 24, 2008).

[35] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[36] Id. at 562.

[37] Id. at 570.

[38] Id at 562 (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988).

8

A. Counts I, II, and III: Fraud

Fraud allegations must be pled according to the standards set forth in Federal Rule of Civil Procedure 9(b), which demands greater specificity than the usual pleading standardard under Federal Rule of Civil Procedure 8(a). Accordingly, Plaintiffs must state with particularity the circumstances constituting fraud or mistake, including the time, place, and content of the alleged false representation. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[39]

To state a claim for fraud or intentional misrepresentation under Delaware law, Plaintiffs must plead that Defendants: 1) deliberately concealed a material fact or overtly misrepresented a fact; 2) acted with scienter; 3) intended to produce reliance; 4) caused Plaintiffs to act in reliance; and 5) caused damages.[40] Defendants contend that the Court must dismiss Counts I, II, and III because Plaintiffs' Complaint does not meet the pleading requirements of Rule 9(b) and does not adequately put Defendants on notice of whether Plaintiffs alleged fraud in the inducement or in the performance of the contract.[41] Defendants further argue that Plaintiffs have not adequately plead facts suggesting Defendants had the scienter required for a viable fraudulent misrepresentation claim.

The Court finds that Plaintiffs have pled reasonable reliance on Defendants' assurances that the restrictions on the share certificates would be removed within six months of the date of

---

[39] Fed. R.Civ. P. 9(b)

[40] Nicolet, Inc. v. Nutt, 525 A.2d 146, 149 (Del. 1987).

[41] In the alternative, Defendants claim Pennsylvania's "gist of the action" doctrine precludes Plaintiffs from suing in tort for breach of contract claims. However, because this doctrine is a quasi-procedural Pennsylvania common law rule, the Court does not believe it governs here, where the parties have elected to be governed by Delaware law. Accordingly, the Court will review only the adequacy of the pleadings under Rule 9(b).

issuance, and that Versa Card would cooperate in causing those restrictions to be lifted. The Court also finds that Plaintiffs have adequately pled causation and damages. But Plaintiffs fail to plead any facts suggesting that Defendants deliberately misrepresented the truth or concealed a material fact or acted with the requisite fraudulent scienter when the parties entered into the Settlement Agreement. Although state of mind may be pled generally under Rule 9(b), Plaintiff must still plead facts and may not simply state legal conclusions. Similarly, Plaintiffs have not plead specific facts suggesting that Defendants' claim that an audit was being conducted, justifying the restriction on stock transfers, was false or misleading. Accordingly, the Court finds that while Plaintiffs do state a claim for breach of contract, they have not adequately plead fraud by the Defendants, and Counts I, II, and II must be dismissed.

    B.    Count V: Individual Liability of Defendant Donovan

Defendants also ask this Court to dismiss Count V against Defendant Donovan. Count V alleges that Donovan was personally responsible for Versa Card's breach of contract, as it was his decision, as CEO and President, to issue a stop notice on the stock restrictions. Plaintiffs provide no legal support for imposing liability on a corporate agent for participation in a corporation's breach of contract. However, a corporate officer may be individually liable for torts he personally commits when acting for the corporation.[42]

Although Plaintiffs do not plead Count V as a tort, but rather as "aiding and abetting in breach of contract,"[43] for the purpose of this Motion the Court will construe this claim as a claim

---

[42] Donsco, Inc. v. Casper Corp., 587 F.2d 602 (3d Cir. 1978), citing, Solo Cup Co. v. Paper Machinery Corp., 359 F.2d. 754 (7th Cir. 1966); Zubik v. Zubik, 384 F.2d 267, 275 (3d Cir. 1967).

[43] Doc. No. 12 at 7.

10

for tortious interference with contract. To state a claim for tortious interference with contract under Delaware law, a plaintiff must plead the following elements: "(1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury."[44] Plaintiffs have adequately pled these elements. However, a corporate officer, such as Donovan, can be held liable for tortious interference with his own company's contract only if his actions exceeded the scope of his authority.[45] Plaintiffs allege no facts demonstrating that Donovan exceeded the scope of his authority as an employee of the corporation when he allegedly caused the Stop Transfer Notice to be issued. Therefore, the Court must presume that Donovan was acting within his corporate role, and the Court cannot hold him personally liable for inducing a breach of contract by his corporation. Accordingly, Count V will be dismissed.

    C.    <u>Count VIII: Claim for Punitive Damages</u>

Defendants also ask this Court to dismiss Count VIII, in which Plaintiffs ask for punitive damages against both Defendants. Punitive damages are rarely permitted in breach of contract cases. Delaware law allows for punitive damages only "where defendants' conduct is 'outrageous' and committed through 'reckless indifference to the rights of others.'"[46] Even viewing the facts in the light most favorable to Plaintiff, the pleadings fail to show that Defendant Donovan's conduct was outrageous. Plaintiffs introduced email correspondence from

---

[44] <u>Aeroglobal Capital Mgmt. LLC v. Cirrus Industies, Inc.</u>, 871 A.2d 428 (Del. Supr. 2005); <u>Commonwealth Const. Co. v. Endecon, Inc.</u>, 2009 WL 609426, *6 (Del.Super., March 9, 2009).

[45] <u>Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood</u>, 752 A.2d 1175, 1182 -1183 (Del.Ch.,1999); <u>Nye v. Univ. of Del.</u>, 897 A.2d 768 (Del. Supr. 2006).

[46] <u>Wilson v. Taylor</u>, 597 F. Supp. 2d 451, 462 (D. Del. 2009) (citing <u>Jardel Co. v. Hughes</u>, 523 A. 2d 518, 528 (Del. 1987).

Defendant Donovan in which he indicates that the company had probable cause for issuing the Stop Transfer Resolution.  Plaintiffs allege no facts from which the Court could conclude that his actions were outrageous or reckless.  Accordingly, the Court will dismiss Plaintiffs' claims for punitive damages.

**V.      Conclusion**

The Court will deny Defendants' Rule 12(b)(2) and Rule 12(b)(3) motions because this Court may appropriately retain personal jurisdiction over all named parties in the litigation, and venue is proper.  The Court will grant the Defendants' Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted as to Counts I, II, III, V, and VIII.  An appropriate Order follows.